**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

JEFFREY BRADBY, *et al.*, *on behalf of themselves and all individuals similarly situated*,

Plaintiffs,

v.

VIVUS SERVICING, *et al.*,

Defendants.

Civil Action No. 3:26-cv-00633-RCY-MRC

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs, *on behalf of themselves and all individuals similarly situated* ("Plaintiffs"), submit this Memorandum in Support of their Motion for Preliminary Approval of Class Action Settlement.

# INTRODUCTION

In December 2024, the United States District Court for the Western District of Virginia granted final approval to a class action settlement to resolve consumer lending claims arising from loans originated by various online lending entities purportedly owned by the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Native American tribe (the "Tribe" or "LDF"). *See Fitzgerald v. Wildcat*, Case No. 3:20-cv-00044 (W.D. Va.), Dec. 17, 2024, Final Approval Order (Moon, J.). That class settlement included: (1) the cancellation of approximately $1,400,000,000.00 ($1.4 billion) in outstanding online consumer loans; and (2) the creation of a $37,350,000.00 ($37.35 million) common fund to be distributed to certain of those consumers who had remitted payments on their loans that were alleged to be unlawful. Although the largest of its kind in this industry, Plaintiffs alleged that this prior settlement did not resolve or release all claims arising from loans originated by the LDF tribal entities. Instead, Plaintiffs and their counsel have continued to seek additional relief through separate litigation against others believed to be involved in the alleged tribal lending process.

The basic allegation against the Settling Defendants[1] is that they participated in the origination, underwriting, funding, and/or collection of illegal tribal loans. After discovering the identities of the other alleged participants in *Fitzgerald*, Plaintiffs filed a case in January 2025 against the Settling Defendants and others who are not part of the settlement. *See Bradby v. Koetting*, No. 3:25-cv-026-RCY (E.D. Va.). Each Defendant named in the initial *Bradby* litigation—whether settling or non-settling—has vigorously defended against and denied Plaintiffs' claims, including by filing or preparing to file various responsive motions to dismiss or

[1] Unless a different and express definition is provided, all capitalized terms herein should be construed in accordance with the definitions assigned in the Stipulation and Agreement of Settlement that is the subject of this Preliminary Approval Motion.

to otherwise compel arbitration that raised voluminous and complex legal challenges. *See, e.g.*, *Bradby*, ECF Nos. 61, 63, 65, 68, 71, 73, 75, 77, 79, 81, 83, 146.

During the pendency of this initial pleading and responsive motions stage, the parties to this now-severed case attended multiple settlement conferences with United States Magistrate Judge Mark R. Colombell. Through these in-person and remote settlement conferences, as well as countless additional communications, the parties in this severed case have entered into a Stipulation and Agreement of Settlement (the "Settlement Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**. The proposed Settlement affords substantial relief to class members, including the creation of a common fund in the amount of $16,500,000.00 ($16.5 million) to be distributed to consumers who repaid amounts alleged to violate applicable state lending laws, as well as injunctive relief in the form of the Defendants' agreement not to support any of the tribal lending entities (the "TLEs") or any related third-party debt collection activities for the tribal loans for a period of at least three (3) years.

The substantial relief created by the Settlement further builds on the relief approved by the United States District Court for the Western District of Virginia in *Fitzgerald* and uses the same class definition from that prior settlement. The Settlement Agreement also largely tracks the language from settlements that courts have uniformly approved in previous tribal lending cases like this one. *See, e.g., Turner v. ZestFinance, Inc.*, No. 3:19-cv-293, Final Approval Order at Dkt. 114 (E.D. Va. July 9, 2020) (granting final approval of a class settlement providing $170 million in debt cancellation and a common fund of $18.5 million); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Final Approval Order at Dkt. 141 (E.D. Va. Dec. 13, 2019) (granting final approval of a class settlement providing $380 million in debt cancellation and a common fund of $53 million); *Galloway v. Williams*, No. 3:19-cv-470, Final Approval Order at Dkt. 115 (E.D. Va. Dec. 18,

2020) (granting final approval of a class settlement providing $100 million in debt cancellation and a common fund of $8.7 million); *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Final Approval Order at Dkt. 95 (E.D. Va. Mar. 29, 2021) (granting final approval of a class settlement providing $383 million in debt cancellation and a common fund of $50 million); *Hengle v. Asner,* No. 3:19-cv-250, Final Approval Order at Dkt. 230 (E.D. Va. Oct. 25, 2022) (granting final approval of a class settlement providing $450 million in debt cancellation and a common fund of $39 million). And critically, the proposed Settlement here does not release the Plaintiffs' claims against the other alleged defendants named in the initial *Bradby* case, from whom Plaintiffs will continue to pursue further recoveries for the benefit of the class. *See, e.g.*, Exhibit A at § 2.25.[2]

Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs now seek preliminary approval of this proposed class action Settlement. More specifically, and for the reasons set forth herein, the Plaintiffs request that the Court certify the proposed Settlement Class and preliminarily approve the proposed Settlement, including the proposed form and means of class notice, as fair, reasonable, and adequate, by entering the proposed Order of Preliminary Approval of Class Action Settlement submitted herewith.[3] If this Preliminary Approval Motion is granted, then prior to the Court's Final Fairness Hearing, the Plaintiffs will submit a final motion supporting the fairness of the proposed class action Settlement after Settlement Class Members have received notice providing them an opportunity to object or opt-out.

---

[2] In particular, the Settlement Agreement does not resolve the claims against Dan Koetting, Jairo Perez, GDA Consulting Group, LLC, Benchmark Consulting and Management, LLC, Envision Management, LLC, KP Investment Group, LLC, Mark Koetting, Russell Myrick, MRC Consulting, LLC, PG2, LLC, Jesus Diaz, Oscar Rodriguez, Unified Analytics, LLC, and National Techmark, Inc. (hereafter, the "Nonsettling Defendants").

[3] As a material component of the Settlement, the parties agreed to the form and substance of the proposed Preliminary Approval Order accompanying this Motion. *See* Exhibit A, Ex. 2.

## KEY SETTLEMENT TERMS

### A. Class Definition

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined to include:

> All consumers residing within the United States who executed a loan agreement with any LDF Tribal Corporation between July 24, 2016, and October 1, 2023.

Ex. A § 3.2 "LDF Tribal Corporation," in turn, is defined as L.D.F. Business Development Corporation, LDF Holdings, LLC, and their subsidiaries, which are Niiwin d/b/a Lendgreen, Niswi d/b/a LendUMo, Ziibi d/b/a Zfunds, Makwa d/b/a Makwa Financial, Niizh d/b/a Brightstar Cash, Midaaswi d/b/a National Small Loan, Naanan d/b/a Bear Claw Lending, Ningodwaaswi d/b/a Sky Trail Cash, Niizhwaaswi d/b/a Loan at Last, Zhaangaswi d/b/a Nine Torches, Biboon d/b/a Bridge Lending Solutions, Giizis d/b/a Lakeshore Loans, Nigig d/b/a UbiCash, Niibin d/b/a Cash Aisle, Mitig d/b/a MitigCapital, Anong d/b/a Avail Blue, Opichi d/b/a Evergreen Services, Zagime d/b/a Blue River Lending, Waawaatesi d/b/a Quick Help Loans (Greenline), and Ishwaaswi d/b/a Radiant Cash. *Id.* § 2.20. The subsidiaries were the companies that contracted directly with consumers, including each of the Plaintiffs.

The class definition covers all of the tribal lending entities owned by the LDF during the class period and mirrors the class definition from *Fitzgerald*, where the class was defined as: "All consumers residing within the United States who executed loan agreements with any LDF Tribal Corporation between July 24, 2016 and October 1, 2023." *See Fitzgerald v. Wildcat*, Case No. 3:20-cv-00044 (W.D. Va.), Dec. 17, 2024 Final Approval Order, ECF 201 at ¶ 3. The class definition also mirrors other class definitions approved in similar cases. *See, e.g.*, *Galloway v. Williams* (*Galloway III*), No. 3:19-cv-470-REP, 2020 WL 7482191, at *2 (E.D. Va. Dec. 18, 2020) (granting final approval of settlement class defined as "[a]ll consumers residing within the United

States or its territories who executed loan agreements with Red Rock Tribal Lending, LLC or Big Picture Loans, LLC (including loans assigned to Big Picture Loans, LLC) from June 22, 2013 to December 20, 2019," subject to certain exclusions such as plaintiffs' attorneys or any judge working on the case); *Hengle v. Asner,* No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va. Oct. 25, 2022) (granting final approval where class was defined as "[a]ll consumers residing in the United States who executed loans agreements with: (1) Golden Valley Lending, Inc., Silver Cloud Financial Inc., Majestic Lake Financial Inc., or prior to February 1, 2021, Mountain Summit Financial, Inc.").

Based on the prior *Fitzgerald* settlement and loan-level data assembled therewith, there are 1,487,971 members in the Settlement Class. *See* Exhibit B, ALCS Declaration (final approval declaration from *Fitzgerald*, which provides the number of class members).

**B. The Settlement Provides Significant and Meaningful Relief to Borrowers.**

The Settlement provides significant consideration to Settlement Class Members, primarily in the form of cash payments and injunctive relief. As for the cash payments, the proposed Settlement will result in the creation of a Fund totaling $16,500,000.00 ($16.5 million), which will be distributed to borrowers who repaid more than the principal balance of their loans. Ex. A § 2.14. As outlined in the Settlement Agreement and as has been approved by several courts in similar cases,[4] the payments will be allocated using a tiered formula after deducting the service awards, attorneys' fees, and costs approved by this Court:

---

[4] This tiered formula—which accounts for the differing remedies available to borrowers in each respective state—has been approved by multiple courts in other tribal lending cases. *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, *Gibbs v. Stinson*, Case No. 3:18-cv-676, Dkt. 141 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293, Dkt. 114 (E.D. Va. July 9, 2020); *Hengle v. Asner*, No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va. Oct. 25, 2022); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146, Dkt. 228 (E.D. Va. Mar. 2, 2024); *Galloway v. Martorello*, 3:19-cv-00314, Dkt. 662 (E.D. Va. June 4, 2024).

> Tier 1: The dollar amount of all payments made by each Settlement Class Member if the original principal amount of their loan was repaid and if the Settlement Class Member resided in Arizona, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, South Dakota, Vermont, and Virginia, at the time the Settlement Class Member took out the loan.
>
> Tier 2: The dollar amount of payments made above the legal interest limits in that respective state if the original principal amount of their loan was repaid and if the Settlement Class Member resided in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Washington D.C., or Wyoming at the time the Settlement Class Member took out the loan.
>
> Tier 3: Settlement Class Members in Nevada and Utah will not receive cash payments.

*Id.* § 3.3(b)(iii).[5] Settlement Class Members in Tier 1 or Tier 2 who repaid more than the principal amount borrowed will receive a cash award based on a pro rata calculation rounded down to the nearest cent. *Id.* § 3.3(b)(iv)(1). In the event any Settlement Class Member took out more than one loan during the class period, his or her claim amount will be calculated by determining the claim amount for each loan and adding them together. *Id.* § 3.3(b)(iii).

As to the injunctive relief, the Settling Defendants have agreed "not to knowingly provide any capital, services, or other affirmative assistance to any of the LDF Tribal Corporations, as well as any of their known successors in interest, for a period of three (3) years following the Effective Date," and not to knowingly "assist in the collection of any loans made by any of the LDF Tribal Corporations within the class period, including any attempted collections by third parties of loans made by any of the LDF Tribal Corporations within the class period." *Id.* § 3.3(c)(i). This relief ensures that none of the Settling Defendants will attempt to engage in any ongoing collections efforts with respect to any of the Settlement Class Members' subject loans.

---

[5] Arkansas, New York, West Virginia, and Wisconsin are not included in the list because none of the LDF Tribal Lending Entities ever made loans in these states.

The relief provided by the Settlement is significant. Those with actual damages will be entitled to receive a cash payment, and the Settlement Class as a whole benefits from the injunctive relief. Importantly, Settlement Class Members will receive all the foregoing consideration without needing to submit a claim form, prove any harm, or take any other affirmative action unless they did not cash their previous settlement check in the *Fitzgerald* litigation, in which case those Settlement Class Members must "affirmatively submit a request through an online portal to be created by the Settlement Administrator and made accessible through the settlement website, or in a separate writing submitted to the Settlement Administrator as part of the notice and approval process." *Id.* § 3.3(b)(iv)(2). This nominal step will ensure that the Fund is not needlessly depleted to print and mail physical payments to Settlement Class Members who have previously failed to cash their checks unless it is confirmed that they intend to do so this time.

**C. Class Action Fairness Notice**

Settling Defendants—with the assistance of the Settlement Administrator—will provide notice of the proposed Settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). Ex. A § 5.3(d). To account for the deadlines under governing law, Plaintiffs request that the Court schedule the Final Fairness Hearing to occur at least 90 days after the CAFA Notice is mailed and at least 120 days following its entry of the Preliminary Approval Order.

**D. Attorneys' Fees, Costs, and Service Awards.**

Class Counsel will apply for attorneys' fees and costs in an amount to be approved by the Court, but not to exceed one-third (*i.e.*, $5,500,000) of the total monetary consideration comprising the Settlement Fund (*i.e.*, $16,500,000). Ex. A § 3.5. The Settlement "is not conditioned upon the District Court's approval of the attorneys' fees and costs sought by Plaintiffs." *Id.* Plaintiffs will also apply for service awards of $10,000 each for their role as class representatives to compensate

them for their efforts in prosecuting this case and obtaining the excellent result for Settlement Class Members. Like attorneys' fees, the Settlement "is not conditioned upon the District Court's approval of the service awards sought by Plaintiffs." *Id.* § 3.4.

**E. Notices and Exclusions.**

Delivery of the Class notice will occur by means of email to verified email addresses or U.S Mail to each Settlement Class Member. If approved by the Court, the selected Settlement Administrator, American Legal Claims Services,[6] will first email direct notice to Settlement Class Members at the most recent email address on file with the Administrator or as otherwise shown in the LDF Tribal Lending Entities' electronic records, as maintained in the ordinary course of business, for each subject Class Member loan. *Id.* § 5.3(a). If email notice results in a bounce-back email, then the Administrator will send an additional direct notice to those relevant Settlement Class Members via first class mail. *Id.* § 5.3(b). Prior to mailing, the Settlement Administrator will run mailing addresses once through the National Change of Address (NCOA) system or any other postal address verification database that the Administrator deems proper. *Id.* Returned direct notices will be remailed if they are returned within twenty days of the postmark date and contain a forwarding address. *Id.* Additionally, the Settlement Administrator will create and update a website on which pertinent information related to this Settlement will be made available to Settlement Class Members, including the Class Action Complaint filed in this severed Action; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action

---

[6] American Legal Claims Services was the approved administrator for the *Fitzgerald* settlement. It has also successfully administered similar class settlements such as in *Galloway* and *Hengle*. *See Galloway III*, 2020 WL 7482191 at *3; *Hengle*, No. 3:19-cv-250, Dkt. 209.

Settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action Settlement. *Id.*

A Settlement Class Member who wants to be excluded from the Class must advise the Administrator in writing, and his or her opt-out request must be postmarked no later than the opt-out deadline. *Id.* § 7.2. Each opt-out request must contain the Settlement Class Member's full name, address, and telephone number; and the Settlement Class Member must sign the request and include a statement that he or she wishes to be excluded from the Settlement. *Id.* Requests for exclusion that do not comply with any of the foregoing requirements will be deemed invalid. *Id.*

## ARGUMENT

### A. Class Certification Standard

Courts in the Fourth Circuit favor resolution of litigation before trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources. As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (citation omitted). Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases). A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

613 (1997). If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement. *Id.* at 547. Second, class members must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a proposed settlement class satisfies Rule 23's requirements and, thus, may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of the class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

Here, the Plaintiffs have negotiated the proposed Settlement on behalf of the Settlement Class, which they request be preliminarily certified for purposes of effectuating the Settlement only.

**B. The Settlement Class Meets the Certification Elements**

*i. The Settlement Class satisfies Rule 23(a)*

1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). But where the class numbers 25 or more, joinder is usually impracticable. *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here. As detailed above, it is estimated that there are approximately 1,487,971 separate persons comprising the Settlement Class, including the named Plaintiffs. *See* Exhibit B, ALCS Declaration (final approval declaration from *Fitzgerald*, which provides the number of class members). Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003). Indeed, courts have found joinder impracticable based on smaller (albeit still numerous) class sizes in other tribal lending cases. *See, e.g.*, *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 58 (E.D. Va. 2021) ("Here, the numerosity requirement is easily met; the putative class consists of at least 12,530 individuals. Joinder of over 12,000 individuals would undoubtedly be impracticable." (citation omitted)), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023); *Gibbs v. Stinson*, 2021 WL 4812451, at *13 (E.D. Va. Oct. 14, 2021) (finding that "43,598 consumers" who received tribal loans was sufficiently

numerous); *Hengle*, No. 3:19-cv-250, Dkt. 209 (finding that 555,000 class members satisfied numerosity requirement).

2. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). The standard is a liberal one that "will not be defeated solely because of some factual variances in individual grievances [among class members]." *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share multiple questions of law and fact. It is alleged that each of the Settlement Class Members received an unlawful online Tribal loan, and that with the Defendants' direct participation and support, were each charged usurious interest rates on their respective consumer loans in violation of federal and state lending law. The alleged practices at issue for each Class Member's claims are identical. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class.

And as with numerosity, courts have repeatedly found that there are common questions of law and facts in similar usurious lending cases, including the related *Fitzgerald* case. *See Fitzgerald*, Case No. 3:20-cv-00044 (W.D. Va.), Aug. 1, 2024 Preliminary Approval Order, ECF 201 at ¶ 4(b) (finding "there are questions of law and fact common to Settlement Class Members");

*see also Williams*, 339 F.R.D. at 58 ("The proposed class members' claims are all based on the same tribal lending scheme, and in particular, on 'the same conduct, practice, and procedure on the part of [the participant].'"); *Gibbs*, 2021 WL 4812451, at *13 (finding "Defendants' ownership and involvement in developing a lending scheme" raised "at least eight common questions of law that can be evaluated with common proof," such as whether the interest rates violated the law, whether the choice-of-law provisions were enforceable, and whether participants constituted an enterprise); *Brice v. Haynes Invs., LLC*, 2021 WL 1916466, at *5 (N.D. Cal. Apr. 23, 2021) (explaining that "whether or not these defendants may be liable for particular violations – given their knowledge of and involvement in the Tribal Lending Schemes, how they were compensated or otherwise benefitted, and any agency defense or RICO proximate cause defense – are issues common to the class and more appropriately tested on summary judgment."); *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 343 (D.N.J. 2019) (same).

3. Typicality

A class representative's claims or defenses must be "typical" of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The Fourth Circuit has described the typicality requirement as "the heart of a representative [party's] ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Typicality demands "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.*; *accord Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012). A plaintiff's interest in prosecuting her case must advance the interests of the class. *Soutter*, 498 F. App'x at 264.

Nonetheless, typicality does not require that a class representative's claims be perfectly identical to each class member's claims. *See, e.g.*, *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998); *Deiter*, 436 F.3d at 467; *Soutter*, 498 F. App'x at 265; *In re*

*Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009). Rather, "the interests of the party representing a class must be substantially similar to those of the unrepresented parties." *Id.*; *see also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006). Thus, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *In re BearingPoint,* 232 F.R.D. at 538 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 178 (2d Cir. 1990)). As the Fourth Circuit has explained:

> To determine if [the plaintiff] has shown typicality, we compare her claims and [the opposing party's] defenses to her claims with those of purported class members by reviewing the elements of [the plaintiff's] prima facie case and the fact supporting those elements and examining "the extent" to which those facts "would also prove the claims of the absent class members."

*Soutter*, 498 F. App'x at 265.

Here, Plaintiffs' and the Settlement Class Members' claims arise from the same course of events, and each of them would have advanced the same legal arguments and evidence to establish liability. Plaintiffs' claims are typical of all class members because they are premised on allegations that the same uniform loan agreements and operational practices were used to collect interest and fees in excess of the amounts permitted by state law pursuant to the same tribal lending model. The Settling Defendants disagree. Nonetheless, in this respect, Plaintiffs and the Settlement Class Members are all in the same boat as recipients of a common pool of loans originated by an LDF Tribal Corporation; while the principal balance and repayment history of each subject loan may differ from one Class Member loan to another, those differences are relevant to damages only, which itself is readily calculable for each Class Member using the Tribe's loan-level data. As one court has explained in a comparable case:

> Plaintiffs have shown that their claims are legally identical to those of the class, as they obtained loans from Western Sky at allegedly usurious interest rates, under

> loan agreements purporting to be governed exclusively by [tribal] law. These are precisely the theories and claims under which each class seeks to recover.

*MacDonald*, 333 F.R.D. at 343.

Plaintiffs' claims all arise from common practices related to the LDF lending portfolio. As discussed in the previous section, these claims implicate the same typical questions of law and fact that were raised (and resolved) on behalf of the Settlement Class Members in *Fitzgerald*, where the Court found that this element of Rule 23 was satisfied. *Fitzgerald*, Case No. 3:20-cv-00044, Aug. 1, 2024, Preliminary Approval Order, ECF 201 at ¶ 4(c) (finding "Plaintiffs' claims are typical of the claims of the Settlement Class Members."). And in similar tribal lending cases, courts have likewise found the same. *See, e.g.*, *Williams*, 339 F.R.D. at 59 (explaining, in a tribal lending case, that "the proposed class representatives suffered the same injury and have the same basic legal claims as those of the proposed class members. The only difference across class members would be the actual damages they are asserting which will not preclude a finding of typicality."); *Gibbs*, 2021 WL 4812451 at *15 ("The only loan term that matters with respect to the claims of each class member, including those of each Named Plaintiff, is whether the interest rate exceeds the relevant thresholds: 12% interest per year for claims under Virginia usury laws and 24% interest per year for claims under RICO. Because the loan agreements originated by all three tribal lending entities exceeded those thresholds, any differences in the terms of these agreements would be immaterial and, as a result, would not destroy typicality[.]" (citations omitted)); *Brice*, 2021 WL 1916466, at *6 ("Regarding differences in the terms of the Plain Green and Great Plains loans, defendants identify no differences that are *material* between the loan documents that would create atypicality given the claims asserted." (emphasis supplied)).

4. Adequacy

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Both Plaintiffs and the Settlement Class Members seek monetary and injunctive relief for the Settling Defendants' allegedly unlawful actions. Considering the similarities of their claims, there is no potential for conflicting interests in this action. *Williams*, 339 F.R.D. at 59 ("As noted under the analysis of the commonality and typicality factors, Plaintiffs' interests are in line with those of the broader classes."); *Gibbs*, 2021 WL 4812451 at *16 ("Plaintiffs have no interests antagonistic to the class's interests. Named Plaintiffs and the class share the identical interest of establishing Defendants' liability based on the same questions of law and fact. Defendants do not contend otherwise, and the record demonstrates no conflicts of interest."). Plaintiffs have also been active in this litigation, including the preparation of a Complaint and by staying abreast of numerous motions, as well as settlement efforts. Exhibit C, Decl. of K. Kelly ("Kelly Decl.") ¶ 20.

Plaintiffs' attorneys are also able to provide more than adequate representation for the Settlement Class. Indeed, they have been approved as class counsel in almost a dozen tribal lending cases while being recognized for their expertise in this niche area of law specifically. *See, e.g.*, *Williams*, 339 F.R.D. at 59 ("Proposed Class Counsel have extensive experience with class actions, consumer financial protection law, and tribal lending operations[.]"); *Galloway III*, 2020 WL

7482191, at *8 (same); *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141; *Gibbs v. Stinson*, Case No. 3:18-cv-676 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293 (E.D. Va.), Dkt. 114; *Hengle*, No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va.); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146, Dkt. 228 (E.D. Va. Mar. 2, 2024).

Plaintiffs' counsel has not only been approved to adequately represent the interests of the class in these other cases, but they have also been expressly called out and commended for their work. For example, when approving a similar class settlement, Judge Lauck commented:

> The representation by class counsel is certainly adequate. I don't want to belabor the issue at the expense of folks, one, getting tired of hearing me, but, two, also maybe feeling a little too good about themselves. But it is the case that the track record here and the success of litigating complex cases, and specifically in tribal payday lenders, is, I think, as high as it gets in this country.

*Gibbs v. TCV V, L.P.,* 3:19-cv-789, Fairness Hr'g Tr. at 139:10-17 (E.D. Va. Mar. 25, 2021). Similarly, when recently approving a settlement in the *Blackburn* matter, Judge Novak noted:

> Plaintiffs and lead counsel have adequately represented the class. Actually, they've done it in an exceptional manner considering where we started in *Hengle* and now we're here. I don't think I can overstate that.

*Blackburn v. A.C. Israel Enterprises,* 3:22-cv-146, Fairness Hr'g Tr. at 6:18-21 (E.D. Va. Oct. 30, 2023).[7] Accordingly, the adequacy requirement of Rule 23 is also satisfied.

*ii. The Settlement Class satisfies the predominance requirement of Rule 23(b)(3).*

This proposed "opt-out" Settlement also satisfies the requirements of Rule 23(b)(3). An action may be maintained as a class action if the four Rule 23(a) elements described above are

---

[7] Beyond tribal lending cases, Plaintiffs' counsel has also been approved in dozens of other consumer-protection and complex class actions, typically as lead or co-lead counsel. *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) ("This Court echoes the sentiments previously stated about Clark's counsel because they pertain here with equal vigor."); Exhibit C, Kelly Decl. at ¶¶ 8-9 (listing cases).

satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts, including in the prior *Fitzgerald* case, have already found these requirements satisfied based on class claims that are indistinguishable from these. *Fitzgerald*, Case No. 3:20-cv-00044, Aug. 1, 2024, Preliminary Approval Order, ECF 201 at ¶ 4(e) (finding "the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member"); *Galloway III*, No. 3:19-cv-470, Dkt. 65 (E.D. Va. Dec. 20, 2019) (finding "the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and, [] a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims and disputes at issue in this Lawsuit."); *Hengle*, No. 3:19-cv-250, Dkt. 209 (E.D. Va. May 12, 2022) (same). These holdings apply equally here.

1. <u>Predominance</u>

Rule 23(b)(3) requires that the common issues of law and fact shared by the representative Plaintiffs and the Settlement Class Members "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott v. GC Servs. Ltd.*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And predominance exists where the resolution of class members' individual claims depends on

examining common conduct by a defendant. *Jeffreys*, 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

As many courts have found in similar cases, the predominance requirement is satisfied here because the essential factual and legal issues for the Settlement Class Members' claims are common and relate to standardized conduct alleged to violate usury laws. *See Gibbs*, 2021 WL 4812451, at *16-20 (finding, on contested motion, that common questions of law and fact predominated under similar circumstances); *MacDonald*, 333 F.R.D. at 350 ("Plaintiffs can answer the question of whether a loan agreement is usurious by using the common evidence of the agreements themselves, which will suffice to demonstrate their claims. Plaintiffs have shown that common questions predominate as to their usury cause of action."); *Upshaw v. Georgia (GA) Catalog Sales, Inc.*, 206 F.R.D. 694, 700-01 (M.D. Ga. 2002) (finding "Defendants' conduct was substantially the same with respect to all members of the class," and "[t]his conduct gives rise to Plaintiffs' class-wide liability claims for violation of the Georgia usury laws and RICO").

In sum, "the majority of the liability questions with regard to Plaintiff's RICO claims do not require inquiry into any individual transactions or file[s] and are identical regardless of which class member would be presenting his or her RICO claim." *Robinson v. Fountainhead Title Grp. Corp.*, 257 F.R.D. 92, 94 (D. Md. 2009). Because this case involves an "alleged scheme to defraud" that "if proven, operated in the same manner with regard to all customers," the predominance requirement of Rule 23(b)(3) is satisfied. *Id.*

2. <u>Superiority</u>

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors courts

consider in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[8] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D. at 323. The same is true here. Common issues predominate and the Settlement Class Members' individual claims are small, thus providing little incentive for individual litigation. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted).

A class action is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above far outweighs the difficulties

---

[8] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Thus, this criterion is not material to the Court's analysis in this posture.

of managing separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly given the relatively small amount of each Class Member's damages claim individually. Moreover, apart from the fact that the proposed class action Settlement allows a recovery of actual damages, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, the predominance and superiority elements are both satisfied. *See Gibbs*, 2021 WL 4812451, at *20 (finding predominance and superiority satisfied under nearly identical circumstances on a contested class certification motion). For these reasons, the Court should conditionally certify the Settlement Class for settlement purposes.

**C. The Settlement Satisfies the Requirements of Rule 23(e)(2).**

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payments; and

(iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

*Galloway III*, 2020 WL 7482191 at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

*i. Plaintiff and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs*, 2021 WL 4812451, at *16 (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same alleged lending practices and, therefore, suffered the

same alleged harm. *See, e.g.*, *Gibbs*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, Class Counsel have spent their entire careers practicing in the field of consumer protection, and they believe that this Settlement is among the best achieved in the industry. *See* Exhibit C, Kelly Decl. ¶¶ 16-17.[9] As explained above, the proposed amount of the Settlement Fund here adds to the recovery achieved for the Settlement Class in *Fitzgerald*, which represents the largest class settlement ever obtained against participants in the tribal lending industry, and greatly surpasses the amount recovered in other tribal lending settlements that received court approval under Rule 23. *See Turner*, No. 3:19-cv-293, Final Approval Order at Dkt. 114 (granting final approval of a class settlement providing $170 million in debt cancellation and a common fund of $18.5 million); *Gibbs*, Case No. 3:17-cv-495, Final Approval Order at Dkt. 141 (granting final approval of a class settlement providing $380 million in debt cancellation and a common fund of $53 million); *Galloway*, No. 3:19-cv-470, Final Approval Order at Dkt. 115 (granting final approval of a class settlement providing $100 million in debt cancellation and a common fund of $8.7 million); *Gibbs*, No. 3:19-cv-00789, Final Approval Order at Dkt. 95 (granting final approval of a class settlement providing $383 million in debt cancellation and a common fund of $50 million); *Hengle,* No. 3:19-cv-250, Final Approval Order at Dkt. 230 (granting final approval of a class settlement providing $450 million in debt cancellation and a common fund of $39 million).

---

[9] Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Given the substantial monetary and injunctive relief afforded by the proposed Settlement—especially when contrasted against the risks associated with the litigation—it should also be approved as fair, reasonable, and adequate. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience).

*ii. Negotiations Were at Arm's Length and Involved United States Magistrate Judge Colombell.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (citation omitted). Here, the history of this litigation, including the filing and litigation of potentially dispositive motions, demonstrates that there was no collusion or fraud between the parties.

To be sure, courts look at several other factors to help confirm that negotiations were at arm's length, including the presence of a mediator. As the leading class action treatise explains: "There appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator." Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles"). Here, over the course of four months, the parties attended settlement conferences with Judge Colombell, who not only presided over the settlement conferences, but stayed active in monitoring the ongoing negotiations between the parties. *See* Ex. A at 4 ("WHEREAS, Plaintiffs and certain

of the Radiant Cash Connected Defendants and Lendgreen Connected Defendants participated in settlement negotiations with one another directly and/or with the assistance of United States Magistrate Judge Mark Colombell, including in-person settlement conferences on July 30, 2025 (as to the Radiant Cash Connected Defendants), October 17, 2025 (as to the Lendgreen Connected Defendants), and November 7, 2025 (as to the Lendgreen Connected Defendants) . . . . ")

In sum, the history of this litigation, as well as the extensive involvement of Judge Colombell, establishes that there was no collusion among the parties.

*iii. The Relief Provided to the Class is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy. *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal. This factor strongly supports approval of the proposed Settlement here. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation. The Settling Defendants have disputed Plaintiffs' claims since the inception of this case and have raised several defenses, including factual disputes over the degree and nature of their alleged involvement in the claimed lending enterprise. In addition, the Settling Defendants have also raised numerous merits defenses, such as the Court's lack of personal jurisdiction over them, improper venue, and that the

Complaint fails to state any claims against them. *Bradby*, ECF Nos. 81, 83, 146. If Settling Defendants were to ultimately succeed on any of the defenses and arguments underlying these motions, or their anticipated motion to compel arbitration, then it could threaten to wipe away the availability of any class-wide relief. Put differently, the Settlement avoids a substantial risk that a loss on numerous different defenses could have resulted in no return to the class while still achieving a significant recovery.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, just as with multiple similar settlements in other tribal lending cases,[10] Class Members will receive automatic cash payments based on the unlawful amount repaid on their loans and the protections afforded by their states of residence at the time they accepted the loans, without having to submit a claim form or any proof of their damages. Thus, cash payments will be automatically distributed based on predetermined, objective criteria. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Because an automatic cash payment is based on objective criteria, this factor weighs strongly in favor of approving the Settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that

---

[10] As explained in above, this tiered formula has been approved by multiple courts in other cases. *See, e.g.*, *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, *Gibbs v. Stinson*, Case No. 3:18-cv-676, Dkt. 141 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293, Dkt. 114 (E.D. Va. July 9, 2020); *Hengle v. Asner*, No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va. Oct. 25, 2022); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146, Dkt. 228 (E.D. Va. Mar. 2, 2024); *Galloway v. Martorello*, 3:19-cv-00314, Dkt. 662 (E.D. Va. June 4, 2024).

"counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, there is no sign that Class Counsel left any money on the negotiating table. And critically, the Settlement "is not conditioned upon the District Court's approval of the attorneys' fees and costs sought by Plaintiffs." Ex. A § 3.5. This means that the Settlement will proceed even if the Court were to reduce the requested fees sought by Class Counsel.

When considering fees, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Flint Water Cases*, 571 F. Supp. 3d at 782. There is no such concern here, as the proposed the Settlement Class and Notice identifies that Class Counsel will seek one-third of the Settlement Fund. *See, e.g.*, Ex. A § 3.5.

Finally, there are no agreements that need to be identified under Rule 23(e)(3).

*iv. The Settlement Treats Class Members Equitably Relative to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The Settlement here achieves this balance. It limits payments to only those Class Members who made unlawful payments on their loans based on the legal protections of their respective states of residence. The Settlement further awards payments on a *pro rata* basis after considering the amount of each qualifying Class Member's payments above the lawful amount in their respective

states. The Settlement thus maximizes the possible payout for Class Members who have suffered actual monetary harm, while also obtaining important injunctive relief that ensures that Settlement Class Members are not subject to any ongoing collection efforts attributable to any of the Settling Defendants. Settlement Class Members, therefore, will be treated equitably relative to each other and their respective damages.

### IV. The Proposed Notice and Notice Plan Satisfy Rule 23 and Due Process Requirements.

Following preliminary approval, the class members must be given notice about the nature of the settlement and their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, which is attached as Exhibit 1 to the Settlement Agreement, and the program for delivering that notice satisfy these requirements. Ex. A § 5.3; *see also id.* Ex. 1. Indeed, the notice plan and language are very similar to the notice programs approved in other tribal lending cases, including *Fitzgerald* and other cases like this with hundreds of thousands of class members. *See, e.g.*, *Fitzgerald*, Case No. 3:20-cv-00044, Aug. 1, 2024, Preliminary Approval Order, ECF 201 at ¶¶ 8-14; *Galloway III*, 2020 WL 7482191 at *3; *Hengle*, No. 3:19-cv-250, Dkt. 209 (approving similar plan for 555,000-member class). These notice programs have resulted in presumed delivery of the notice to nearly 100% of class members.

*See Galloway III*, 2020 WL 7482191, at *3 ("successful delivery rate of 99.67%"); *Hengle*, No. 3:19-cv-250, Dkt. 222 (noting delivery rate of 99.27%).

As in *Fitzgerald, Galloway III* and *Hengle*, the proposed notice program here will also provide individual direct notice. Under the Settlement Agreement, the Administrator will first email direct notice to each Settlement Class Member at his or her most recent email address shown in the LDF Tribal Entities' loan records (or as updated while administering the *Fitzgerald* settlement). Ex. A § 5.3(a). If email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail and returned direct notices will be remailed if they are returned within twenty days of the postmark date and contain a forwarding address. *Id.* The Administrator also will create and maintain a website, on which pertinent information will be made available to Settlement Class Members, including the operative complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action Settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action Settlement. *Id.* § 5.3(b). To avoid confusion, the parties have agreed to use the website name "consumerloansettlement2.com," because the settlement in the *Fitzgerald* case was administered using "consumerloansettlement.com." *Id.* § 5.3(c).

The Settlement's robust notice and administration plan will ensure that as many Settlement Class Members as possible receive the payments to which they are entitled. Class Notice will be sent in accordance with Federal Rule of Civil Procedure 23(c) in the manner approved by the Court either by email notice to verified email addresses or U.S. Mail to each Settlement Class Member on the Class List.

As the *Manual for Complex Litigation* recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified. *See* Manual

for Complex Litigation § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C.*, 2013 WL 5881422, at *5 (D. Neb. 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notice and Notice Plan represent the "best notice that is practicable under the circumstances," and they therefore meet the notice requirements of Rule 23. The Notice and Notice Plan should thus also be approved by the Court.

## CONCLUSION

The proposed class action Settlement is a hard-earned and excellent result considering the circumstances of the litigation, the relative strengths and weaknesses of the parties' respective claims and defenses, and the Settling Defendants' resources. The terms of the proposed class action Settlement, as well as the circumstances of negotiations and its elimination of the risks and costs with further litigation through trial and appeal, satisfy all requirements for preliminary approval.

For these reasons, Plaintiffs respectfully request that the Court issue an Order in the same or in a substantially similar form to that of the [Proposed] Preliminary Approval Order attached to the Settlement as Exhibit 2 that: (1) grants preliminary approval of the proposed Settlement under Fed. R. Civ. P. 23; (2) approves the Proposed Notice attached as Exhibit 1 to the Settlement Agreement; (3) orders that the Proposed Notice be immediately issued to Settlement Class Members in accordance with the notice plan described in the Settlement Agreement; (4) approves the appointment of American Legal Claims Services as the Settlement Administrator; and (5) sets the date of the Final Fairness Hearing to at least 120 days after entry of the Preliminary Approval Order at a date and time to be determined based on the availability of the Court and the respective counsel for the Settling Parties.

Respectfully submitted,
**PLAINTIFFS,** *individually and on behalf of all others similarly situated*

By: */s/ Kristi C. Kelly*____________________
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiffs*